United States District Court
Middle District of Florida
Jacksonville Division

**RICHARD DUANE LEWIS,**

    *Plaintiff,*

v.                                                                 **NO. 3:18-cv-411-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Richard Lewis brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to review a final decision of the Commissioner of Social Security denying his applications for benefits. Under review is a decision by an Administrative Law Judge ("ALJ") dated April 12, 2017. Tr. 16–24. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 16–24, and the parties' briefs, Docs.16, 17, and not fully repeated here.

## I.    Arguments

Lewis argues (1) the ALJ failed to comply with an Appeals Council's order, (2) the ALJ erred in considering his testimony, (3) the vocational expert's ("VE's") testimony is unsupported by substantial evidence and inconsistent with the Dictionary of Occupational Titles ("DOT"), (4) the ALJ erred in finding his anxiety not severe and including no mental limitation in the residual functional capacity ("RFC"), and (5) the inability to afford a surgical evaluation should not be held against him. Doc. 16.

## II. Background

The Appeals Council vacated a previous decision by the ALJ, Tr. 140–58, because the ALJ had failed to provide post-hearing evidence to Lewis and notice of the right to request a supplemental hearing and had listed no jobs at step five. Tr. 159–61. The Appeals Council remanded the case to the ALJ and directed him to ensure the record is complete and Lewis has a chance to review it; further consider Lewis's maximum RFC and provide rationale for any limitations; and, "if warranted by the expanded record, obtain supplemental evidence from a" VE. Tr. 161. The ALJ conducted another hearing and issued another decision finding no disability. Tr. 16–24, 72–89. In the second decision, the ALJ incorporates by reference the summary of medical evidence from the first decision. *See* Tr. 21.

The ALJ found Lewis has severe impairments of lumbar degenerative disc disease, right shoulder tendinosis status post acromioplasty, and obesity, with pain mostly from a 20-foot fall at Suwanee Springs in 2009. Tr. 19, 61. The ALJ discussed the new medical evidence, Tr. 20–21, and for the RFC, found Lewis could perform light work with additional limitations:

> [H]e requires a sit/stand option every 30 minutes; no climbing of ladders/ropes/scaffolds but he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; no overhead reaching; no concentrated exposure to extreme heat or vibrations; no work around moving mechanical parts or work at unprotected heights.

Tr. 20.

## III. Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and alteration omitted). "[W]hatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* "Substantial evidence … is more than a mere scintilla. … It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The substantial-evidence standard applies only to factual findings. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "[N]o similar presumption of validity attaches to the … conclusions of law." *Id.*

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court need not "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969). An erroneous factual statement by an ALJ may be harmless. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010).

## IV.   Law and Analysis

### A.   *Compliance with Remand Order and RFC Determination*

Under a heading titled, "The ALJ Failed to Comply with the Appeal's Council's Order Regarding Post-Hearing Medical Evidence," Lewis contends the evidence submitted after the first hearing on back and shoulder impairments warranted "further consideration," and whether the ALJ properly considered those impairments is unclear. [Doc. 16 at 12](#)–13. The Commissioner responds:

3

> As the ALJ explained, the Appeals Council remanded the earlier ALJ decision because, subsequent to the hearing, the ALJ received medical records that were not proffered to Plaintiff and Plaintiff was not advised of his right to request a supplemental hearing. The Appeals Council's order also noted that the earlier ALJ decision failed to identify any jobs in the national economy that Plaintiff could perform.
>
> Plaintiff has not alleged that the second ALJ decision contains either of these two errors. … Rather, Plaintiff appears to concede he did have an opportunity to review the records and question and received a supplemental hearing, but merely believes that the ALJ should have concluded Plaintiff's back and shoulder impairments resulted in limitations in excess of the assessed RFC. Nothing in the Appeals Council's remand order directed the ALJ to find specific back or shoulder limitations. Thus, there is no error.

Doc. 17 at 5 (citations omitted).

The Commissioner is correct. The ALJ did not fail to comply with the Appeals Council's order. The Court therefore construes Lewis's argument as challenging the RFC.

A claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Social Security Administration ("SSA") uses the RFC at step four to decide whether the claimant can perform any past relevant work and, if not, at step five with other factors to decide whether there are other jobs in significant numbers in the national economy he can perform. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). The ALJ need not defer to any medical opinion about the RFC. *See* 20 C.F.R. §§ 404.1527(d)(3) (2012), 416.927(d)(3) (2012).

An ALJ must consider all relevant record evidence. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad

4

rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks omitted).

Substantial evidence, as detailed in the ALJ's decision and the Commissioner's brief, supports the RFC.[1] Moreover, as the ALJ observed, "It is also not insignificant that none of the claimant's treating or examining physicians rendered an opinion that is consistent with a finding that the claimant has been unable to perform substantial gainful activity for a period of 12 or more months."[2] Tr. 22.

Lewis contends the ALJ adopted the summary of medical evidence from the first opinion, which found "there is no evidence of radiculopathy," even though Michael Ukaegbu, M.D., diagnosed radiculopathy in the back and shoulder in December 2016 and January 2017, respectively. Doc. 16 at 13–14. He argues the ALJ "disregarded" findings from 2016 MRIs based on an outdated 2011 straight-leg test. Doc. 16 at 14.

Besides incorporating the summary of medical evidence from the first decision, the ALJ added in the new decision this statement about a March 2016 lumbar MRI: "As noted in the previous decision, [Lewis] has had normal straight leg raising tests which are used to assess radicular pain. Since these tests were routinely negative, there is no real correlation with what is suggested on the lumbar spine MRI study." Tr. 22. While the ALJ may have not included radiculopathy as a diagnosis, he did note possibly related symptoms of numbness and tingling, Tr. 21, and other pain, Tr.

---

[1]See for example a June 2014 cervical-spine MRI showing "[m]ild to moderate degenerative disc disease [and] only mild bilateral neural foraminal stenoses at C5-C6," Tr. 855; a March 2016 lumbar spine MRI showing mild bilateral facet arthrosis at L4-5, "degenerative disc disease with right foraminal disc herniation of the protrusion type and right foraminal stenosis with impingement of the L5 nerve root," and bilateral facet arthrosis, Tr. 1209; and exams revealing normal gait and station or muscle strength, Tr. 1097–98, 1148, 1270, 1280, 1285, 1291. Doc. 17 at 9–10.

[2]The ALJ's decision does not reference a medical opinion, and Lewis does not point to any that should have been considered.

5

22 ("He reported increased thoracic back pain and itching/tingling in his hands over the last month in January 2017."). What limitations Lewis thinks should have been included are unclear. Given there appears to be only one straight leg raising test in the record, *see* Tr. 508, the ALJ's description of the tests (plural) is inaccurate. To the extent the inaccuracy undermines the ALJ's finding the tests are inconsistent with the later MRI, the error is harmless, *see Diorio*, 721 F.2d at 728, because other objective evidence supports the RFC.

Lewis contends that although a July 2015 MRI showed no tear in his left shoulder, the ALJ "neglected to mention" that the right-shoulder MRI showed tendinosis with partial tearing of the supraspinatus tendon and partial tearing of the biceps tendon. Doc. 16 at 14–15 (citing Tr. 1203–04). The ALJ did not have to mention every piece of evidence, *see Dyer*, 395 F.3d at 1211, and the decision is not a broad rejection showing the ALJ failed to consider his medical condition as a whole, particularly with a restrictive RFC that limits the lifting and carrying to light work, prohibits climbing with the arms, and prohibits overhead reaching, *see* Tr. 20.

Lewis contends the ALJ's description of "minimal diagnostic findings" and a description of the July 2016 MRI as showing "only mild central canal stenosis at C4-5, C5-6 and moderate central canal stenosis at C6-7," is wrong, explaining the MRI results show moderate to severe foraminal stenosis at C6-C7 and likely impingement of the right C7 nerve. Doc. 16 at 15 (citing Tr. 1205–07). The ALJ's statements are accurate, they just omit some details. Again, the ALJ did not have to mention every piece of evidence, *see Dyer*, 395 F.3d at 1211, he clearly considered Lewis's impairments in finding a restrictive RFC, and how information would have changed the RFC is unclear.

B.   *Treatment of Lewis's Testimony*

Lewis contends substantial evidence does not support the ALJ's consideration of his testimony, contending his testimony is consistent with the objective evidence

6

and reported activities of daily living, and the ability to do daily activities does not preclude a disability finding. Doc. 16 at 15–17.

In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence the condition is so severe that it can be reasonably expected to cause the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, an ALJ must consider all available evidence, including objective medical evidence and statements from the claimant and others. 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3). An ALJ also must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An ALJ must articulate his reasoning.[3] *Holt*, 921 F.2d at 1223.

The ALJ stated,

> The established [RFC] is not inconsistent with what can reasonably be expected given the claimant's medical history. It is also significant that none of the claimant's treating or examining physicians rendered an

---

[3]Effective March 28, 2016, Social Security Ruling 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (republished). The Social Security Ruling removed "credibility" from policy because the regulations do not use that term. *Id.* The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character" and provided a two-step evaluation process. *Id.* Because the ALJ issued his decision on April 12, 2017, Tr. 24, the new SSR applies here. *See Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply when the ALJ issued his decision before the SSR effective date).

> opinion that is consistent with a finding that the claimant has been unable to perform substantial gainful activity for a period of 12 or more months.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 22.

Lewis's argument fails. The ALJ found Lewis's testimony "not entirely consistent with the medical evidence," and substantial evidence supports that finding because substantial evidence supports the RFC (normal results on exams, no opinion on any disabling limitations by a physician, etc.).[4] Lewis challenges the ALJ's reliance on activities of daily living, but it does not appear the ALJ relied on those in weighing Lewis's testimony. To the extent that activities of daily living falls within the ALJ's reliance on "other evidence in the record," the ALJ provided other reasons for rejecting Lewis's testimony, including inconsistencies with the medical evidence.[5]

---

[4]In the first decision, the ALJ also rejected Lewis's testimony because his work history before the alleged onset date showed a pattern of low and inconsistent earnings, possibly indicating a lack of motivation (rather than ability) to work, and his testimony was inconsistent with information in function reports from himself and his mother. Tr. 150. Because the ALJ incorporated only the summaries of medical evidence from the first decision and did not expressly incorporate any findings, the ALJ appears to have not relied on those factors in the second decision. The Commissioner still relies on an inconsistency with the mother's function report, citing in part "Tr. 21" for that proposition, but that information is not included in Tr. 21 or the second ALJ decision.

[5]As the Commissioner observes, "the regulations specifically instruct an ALJ to consider reported daily activities when evaluating a claim of disabling subjective symptoms." Doc. 17 at 13 (citing 20 §§ C.F.R. 404.1529(c)(3)(i), 416.929(c)(3)(i)). An ALJ may therefore consider daily activities, but "activities of short duration, such as housework," do not disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11 Cir. 1997). The ALJ made no such finding here.

## C. VE Testimony

Lewis raises two arguments concerning the VE's testimony. The first relates to the ALJ's inclusion of or failure to include certain limitations. Lewis contends the "ALJ's articulation of the RFC is erroneous [because] the finding that he can lift up to 20 pounds, and 10 pounds frequently, is not supported by substantial evidence"; the ALJ failed to adopt a limitation that Lewis would off-task 20 percent of the workday, which the VE testified would preclude all work; and the record "does not reveal substantial evidence for discrediting Mr. Lewis's statements that he can sit for only five a minutes at a time, and needs to lie down 4 to 5 times a day," which the ALJ failed to include in any hypothetical to the VE or in the RFC. Doc. 16 at 18–19.

The second argument relates to an asserted conflict between the VE's testimony and the DOT. Lewis contends the VE's testimony that employers allow a sit-stand option for the jobs of cashier, ticket taker, and ticket seller conflicts with the DOT because the DOT does not mention a sit/stand option. Doc. 16 at 19. Lewis also relies on SSR 83-12.[6] And Lewis contends the VE's "vague, anecdotal reference to having discussed the issues of 'off-task behavior and absenteeism' is not substantial evidence for the ALJ's conclusion that [those] jobs … offer a sit-stand option." Doc. 16 at 19–20.

At step five, an ALJ must decide whether a significant number of one or more jobs that the claimant can perform exist in the national economy. 20 C.F.R. §§ 404.1566(b), 416.966(b). An ALJ may use a VE's testimony for that determination.

---

[6]SSR 83-12 provides:

> [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

Social Security Ruling 83-12, 1983 WL 31253, at *4 (Jan. 1 1983).

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). For a VE's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes the claimant's impairments. *Id.* An ALJ is "not required to include findings in the hypothetical that he had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

"When there is an apparent unresolved conflict between VE or [vocational specialist ("VS")] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). "The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." *Id.* An example of a reasonable explanation includes "a VE's or VS's experience in job placement or career counseling." *Id.* Once a conflict has been identified, an ALJ must "offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018).

At the second hearing, the ALJ and VE engaged in this colloquy:

VE  [In response to a hypothetical about a claimant being off-task 20 percent of the workday] That [hypothetical] would eliminate all these jobs. It exceeds what's typically permitted for off-task behavior which is around ten percent.

ALJ  Okay, and what is the tolerance of employers for absenteeism?

VE  Many employers allow ten unscheduled absences per year.

ALJ  And are there any conflicts between the testimony and the [DOT]?

VE  No, Your honor.

ALJ  Okay, and as I understand the, the [sic] DOT does not cover the sit/stand and the testimony on that is based on?

10

> VE It's based on more than 25 years of experience in the field of vocational rehabilitation, which includes interviewing claimants about how work is performed and conducting labor market studies with employers.

Tr. 86. Lewis's lawyer asked no follow-up questions. *See* Tr. 86.

In the decision, the ALJ stated,

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT].
>
> I also note that the [VE's] testimony regarding the sit/stand option was based on 25 years of experience in vocational rehabilitation, interviewing clients about how work is performed and conducting labor market studies with employers.

Tr. 24.

Lewis's first argument fails. His argument appears to be that the RFC is unsupported by substantial evidence and the ALJ should have included other limitations. As discussed, substantial evidence supports the RFC. Because the ALJ need not "include findings in the hypothetical that he had properly rejected as unsupported," *Crawford*, 363 F.3d at 1161, the ALJ did not have to include unsupported limitations in any hypotheticals (or adopt all limitations in one hypothetical in the final RFC).

Lewis's second argument also fails. The ALJ asked about, and the VE explained, the apparent conflict with the DOT on the sit/stand option. The VE's explanation for the sit/stand option—25 years of experience in vocational rehabilitation, interviewing clients, and conducting labor market studies—provides a reasonable basis to rely on the VE's testimony instead of the DOT. The ALJ fulfilled his duty to "offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict," *see Washington*, 906 F.3d at 1356. As the Commissioner explains, there is no conflict with Social Security Ruling 83-12: "[T]hat ruling specifically instructs an ALJ to seek VE testimony to determine whether

certain jobs could allow a claimant to alternate sitting and standing. … This is precisely what the ALJ did. Thus, the ALJ did not err [i]n relying on the VE's testimony." Doc. 17 at 16.

## D. *Treatment of Mental Impairments*

Lewis contends the ALJ erred in finding his anxiety not severe and not including any mental limitations in the RFC. Doc. 16 at 20–21. He contends the medical record shows diagnoses of anxiety and treatment with Xanax, one exam showed medication did not relieve his anxiety, and another listed insomnia because of anxiety. Doc. 16 at 20–21.

At step two, an ALJ considers whether a claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). An impairment or combination of impairments is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

"Step two is a threshold inquiry." *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986). It is "a reasonable administrative convenience designed to screen out groundless claims." *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987). Only "the most trivial impairments" are rejected because a "claimant's burden at step two is mild." *McDaniel*, 800 F.2d at 1031. Still, the "mere existence" of an impairment does not show its effect on the claimant's ability to work. *Moore*, 405 F.3d at 1213 n.6.

A finding of any severe impairment satisfies step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, an ALJ need not identify every severe impairment at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949,

12

951 (11th Cir. 2014); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011). Still, an ALJ must demonstrate he considered the claimant's impairments—severe and not severe—in combination at step three and in assessing the RFC. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

The "paragraph B" criteria are used to assess functional limitations imposed by medically determinable mental impairments. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C). The SSA considers the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(1)-(4), 416.920a(c)(1)–(4) (citing 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00E). To satisfy the "paragraph B" criteria, the mental impairment must cause "an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(A)(2)(b). If the degrees of limitation in the four areas are "none" or "mild," the SSA "generally conclude[s] that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ found Lewis's anxiety not severe. Tr. 19. He explained, "It is noted that anxiety is mentioned in the treatment notes for which he is prescribed Xanax (Exhibit 3F/10). Treatment records from Primary Care West from August 2015 through February 2017 continually revealed normal psychiatric exams (Exhibits 21F, 25F)." Tr. 19.

The ALJ considered the "paragraph B" criteria. On the ability to understand, remember, or apply information, he found Lewis has a mild limitation "in an abundance of caution," even though Lewis testified to no limitations in those areas. Tr. 19. On the ability to interact with others, he again found Lewis has a mild limitation "in an abundance of caution," explaining the state-agency consultants found no limitation in social functioning. Tr. 19. On the ability to concentrate, persist,

13

or maintain pace, the ALJ found a mild limitation, explaining there was "no mention" in the record of difficulties in those areas. Tr. 19. On the ability to adapt or manage oneself, the ALJ found Lewis has a mild limitation, observing no evidence of any related difficulty in the record. Tr. 20. Because the areas showed no more than a mild limitation in any area, the ALJ found Lewis's anxiety not severe. Tr. 20.

Substantial evidence supports the ALJ's finding that Lewis's anxiety is not severe, and there are no related mental limitations that the ALJ should have included in the RFC. That Lewis had been diagnosed with anxiety and took Xanax does not mean the impairment was severe or affected his ability to work. As the Commissioner observes, the ALJ explained a state-agency consultant found Lewis's anxiety not severe (noting that a primary-care physician prescribed him Xanax and "no mental status abnormalities [had been] noted"); Tr. 106, 131; treatment notes from August 2015 through February 2017 show normal psychiatric examinations, *see* Tr. 844, 1098, 1142, 1148, 1270, 1275, 1280, 1285, 1291; and Lewis's anxiety was adequately controlled with Xanax, *see* Tr. 518. [Doc. 17 at 7](Doc. 17 at 7).

Lewis points to a report from a May 2014 visit with Lynda Wright, a licensed clinical social worker at Family Health Center of Columbia County. [Doc. 16 at 20](Doc. 16 at 20) (citing Tr. 939). Wright diagnosed anxiety, recommended continued counseling, and wrote Lewis "return[ed] for psych [follow-up]. Reports that medication given to him, 'Celexa' [for depression] did not work and felt it kept him awake at night. Requesting something for anxiety." Tr. 939. She noted increased anxiety, that he denied suicidal thoughts or hallucinations, and that he reported he was going through a bad divorce. Tr. 939.

Lewis also points to a September 2014 visit with Jan Gurney, D.O., of Palms Medical Group, in which Dr. Gurney states, "In discussing pt's sleep problem, my impression is that it is his bipolar disorder interfering with sleep. I advise against using Ambien every night. Pt. resistant to this idea. … [I] recommend referral to psych to get bipolar disorder under better control. Recommend Tegretol 200 mg BID

14

for mood stability. Do not recommend taking Ambien every night. Pt. not receptive to this." [Doc. 16 at 20](#)–21 (citing Tr. 1088).

Lewis then states, "Thus did the Palms medical records identify Mr. Lewis's condition as 'anxiety, depression and insomnia.' (R. 843, 1001)." [Doc. 16 at 21](#). To the contrary those records—Tr. 843 and Tr. 1001—reflect medical reports in which the provider stated Lewis was *negative* for anxiety, depression, and insomnia.[7] In any event, the Court cannot reweigh the evidence; that substantial evidence supports the ALJ's finding suffices.[8]

### E. Failure to Seek Treatment

Lewis contends he did not act on a November 2016 referral from Dr. Ukaegbu because he could not afford it and his inability to afford a surgical evaluation should "not support a denial of benefits." [Doc. 16 at 21](#)–22.

In evaluating the intensity and persistence of symptoms, the SSA considers a variety of evidence, including medication and treatment other than medication the claimant "has received for relief" of pain and other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv) & (v), 416.929(c)(3)(iv) & (v).

"[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). But claimant's poverty may excuse noncompliance. *Id.* If an ALJ relies on noncompliance as the "sole ground for the denial of disability benefits" despite evidence in the record the claimant is financially unable to comply with prescribed

---

[7]Another report—from April 2014 with Palms Medical Group—assesses "bipolar disorder" but lists it as "stable." Tr. 928. Lewis does not identify bipolar disorder as an impairment.

[8]At the hearing, Lewis testified he takes Ambien because the pain keeps him awake, Tr. 79–80, and at no point mentioned anxiety, *see* Tr. 72–89.

15

treatment, the ALJ must determine whether the claimant could afford the prescribed treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). If an ALJ's no-disability finding is "not significantly based on a finding of noncompliance," then the ALJ's failure to consider a claimant's ability to afford medication is not reversible error. *Id.*

Lewis's argument fails. As the Commissioner observes, "[T]he ALJ did not find that [Lewis] was noncompliant with recommended treatment[.]"[9] Doc. 17 at 14. Though the ALJ discussed the December 2016 appointment with Dr. Ukaegbu (to show that "the claimant reported that his neck and back pain were fairly controlled with Tramadol," Tr. 22 (citing Tr. 1280–81), he did not mention the referral or that Lewis had declined the referral. Even had the ALJ considered it, he did not rely on noncompliance as the "sole ground for the denial of disability benefits," *see Ellison*, 355 F.3d at 1275, instead explaining that the objective evidence does not support that Lewis is disabled.

## V. Conclusion

The Court **affirms** the Commissioner's decision and directs the clerk to enter judgment for the Commissioner and against Richard Duane Lewis and close the file.

**Ordered** in Jacksonville, Florida, on September 27, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

---

[9]The Commissioner does not discuss the neurosurgery referral but discusses a note from the ALJ's first decision about how blood tests showed Lewis was not taking his prescribed pain medication, arguing, "It is not clear what Plaintiff was doing with his pain pills," but he made no allegation he could not afford to fill them. Doc. 17 at 14. Lewis limits the argument to the referral from Dr. Ukaegbu.

16

c: Counsel of record